KYLE J. KAISER (13924)
LORA COOPER (19141)
NICOLE JOHNSTON (18977)
Assistant Utah Attorneys General
SEAN D. REYES (7969)
Utah Attorney General
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
Email:kkaiser@agutah.gov
        loracooper@agutah.gov
        njohnston@agutah.gov

*Attorneys for Alpine School District, Ryan Burke, Joe Hayes, and David Turner*

---

## IN THE UNITED STATE DISTRICT COURT
## IN AND FOR THE DISTRICT OF UTAH

| | |
|---|---|
| A.Z., by and through his guardians ANDREA ZOLMAN and STEVEN ZOLMAN<br><br>Plaintiffs,<br><br>v.<br><br>ALPINE SCHOOL DISTRICT, RYAN BURKE, KATHY DRAPER, JOE HAYES, DAVID TURNER, and ALICIA FRYER<br><br>Defendants. | **DEFENDANTS' ALPINE SCHOOL DISTRICT, RYAN BURKE, JOE HAYES, AND DAVID TURNER PARTIAL MOTION TO DISMISS AND MEMORADNUM IN SUPPORT**<br><br><br>Case No. 2:24-cv-00051<br><br>Judge Ted Stewart<br>Magistrate Judge Daphne A. Oberg |

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. 2

TABLE OF AUTHORITIES ............................................................................................ 3

Page(s) ............................................................................................................................... 3

MOTION ............................................................................................................................ 6

MEMORANDUM OF LAW ............................................................................................. 8

INTRODUCTION .............................................................................................................. 8

FACTUAL BACKGROUND ............................................................................................ 8

LEGAL STANDARDS ..................................................................................................... 15

LEGAL ARGUMENT ...................................................................................................... 18

    1.    Plaintiffs fail to state a claim under Title II of the ADA. ................... 18

        1.1.    Plaintiffs fail to plead that Plaintiff was discriminated against or denied participation in an activity. .............................................................................. 19

        1.2.    Plaintiffs have failed to allege any District action was taken because of A.Z.'s disability. ............................................................................................................... 22

    2.    Plaintiffs fail to state a claim under the Rehabilitation Act .............................. 24

    3.    Count III should be dismissed against the Individual District Defendants ...................... 25

        3.1.    Plaintiffs fail to plead a supervisory liability claim against David Turner ................ 27

        3.2.    Plaintiffs fail to identify specific actions taken by Ryan Burke and Joe Hayes. ........ 28

        3.3.    The Individual Defendants are entitled to qualified immunity. ................................ 29

    4.    Count IV should be dismissed, because the Fourth Amendment does not apply to school officials' use of force .................................................................................................. 33

        4.1.    The Fourth Amendment's protections do not apply to claims of excessive force by school employees ............................................................................................................ 34

        4.2.    The District and Individual District Defendants Cannot Be Liable Because No Employee Violated the Constitution ............................................................................... 36

        4.3.    Even if Plaintiffs stated a claim under the Fourth Amendment, the law was not clearly established, and the Individual District Defendants are entitled to dismissal ........... 37

    5.    Count V fails to state a claim, as there is no clearly established Fourth Amendment right to have another school district employee intervene in potentially unconstitutional school discipline, and the Individual District Defendants were not in a position to Intervene ............ 38

CONCLUSION ................................................................................................................... 39

# TABLE OF AUTHORITIES

Page(s)

Federal Cases

*Abeyta ex rel. Martinez v. Chama Valley Indep. Sch. Dist. No. 19,*
    77 F.3d 1253 (10th Cir. 1996) ......................................................................... 35

*Armijo ex rel. Chavez. v. Wagon Mount Pub. Sch.,*
    159 F.3d 1253 (10th Cir. 1998) ....................................................................... 30

*Ashcroft v. al-Kidd,*
    563 U.S. 731 (2011) ........................................................................................ 17

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................. 16, 25

*Barney v. Pulsipher,*
    143 F.3d 1299 (10th Cir. 1998) ....................................................................... 31

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................................ 16

*Brown v. Montoya,*
    662 F.3d 1152 (10th Cir. 2011) ............................................................27, 28, 29

*Bryson v. City of Okla. City,*
    627 F.3d 784 (10th Cir. 2010) ......................................................................... 20

*Carabajal v. City of Cheyenne,*
    847 F.3d 1203 (10th Cir. 2017) ....................................................................... 17

*City of Canton, Ohio v. Harris,*
    489 U.S. 378 (1989) ................................................................................. 19, 20

*Clark v. Wilson,*
    625 F.3d 686 (10th Cir. 2010) ......................................................................... 17

*Cohon ex rel. Bass v. N.M. Dep't of Health,*
    646 F.3d 717 (10th Cir. 2011) ......................................................................... 24

*Connick v. Thompson,*
    563 U.S. 51 (2011) ................................................................................20, 30, 31

*Crane v. Utah Dep't of Corr.,*
    15 F.4th 1296 (10th Cir. 2021) ........................................................................ 24

*Derosier v. Balltrip,*
    149 F. Supp. 3d 1286 (D. Colo. 2016) ............................................................ 32

*Dodds v. Richardson,*
    614 F.3d 1185 (10th Cir. 2010) ................................................................. 26, 32

*Estate of Booker v. Gomez,*
    745 F.3d 405 (10th Cir. 2014) ......................................................................... 17

*Estate of Jensen ex rel. Jensen v. Clyde,*
    989 F.3d 848 (10th Cir. 2021) ................................................................... 25, 26

*Estate of Lobato ex rel. Montoya v. Correct Care Sols., LLC,*
    No. 15-CV-02718, 2017 WL 1197295 (D. Colo. Mar. 31, 2017) .................... 31

*Fogarty v. Gallegos*,
   523 F.3d 1147 (10th Cir. 2008) ........................................................ 36
*Garcia ex rel. Garcia v. Miera*,
   817 F.2d 650 (10th Cir. 1987) .......................................................... 35
*Gee v. Pacheco*,
   627 F.3d 1178 (10th Cir. 2010) ........................................................ 16
*Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.*,
   272 F.3d 168 (3d Cir. 2001) ............................................................. 34
*Graham v. Connor*,
   490 U.S. 386 (1989) .......................................................................... 34
*Hall v. Bellmon*,
   935 F.2d 1106 (10th Cir. 1991) ........................................................ 16
*Hall v. Burke*,
   12 F. App'x 856 (10th Cir. 2001) ..................................................... 39
*Hall v. Witteman*,
   584 F.3d 859 (10th Cir. 2009) .......................................................... 16
*Harris v. Robinson*,
   273 F.3d 927 (10th Cir. 2001) .......................................................... 35
*Ingraham v. Wright*,
   430 U.S. 651 (1977) .......................................................................... 34
*J.H. ex rel. J.P. v. Bernalillo Cnty.*,
   806 F.3d 1255 (10th Cir. 2015) ........................................................ 23
*J.V. v. Albuquerque Pub. Sch.*,
   813 F.3d 1289 (10th Cir. 2016) ..............................................18, 19, 22, 23
*Leverington v. City of Colo. Springs*,
   643 F.3d 719 (10th Cir. 2011) .......................................................... 16
*Mick v. Brewer*,
   76 F.3d 1127 (10th Cir. 1996) .......................................................... 38
*Morris v. City of New York*,
   No. 12-CV-3959, 2013 WL 5781672 (E.D.N.Y. Oct. 28, 2013) ........... 31
*Muskrat v. Deer Creek Pub. Sch.*,
   715 F.3d 775 (10th Cir. 2013) ....................................................35, 36, 37
*Pearson v. Callahan*,
   555 U.S. 223 (2009) .................................................................... 17, 29
*Pueblo of Sandia v. United States*,
   50 F.3d 856 (10th Cir. 1995) ............................................................ 17
*Scott v. Mid-Del Schools Bd. of Educ.*,
   724 F. App'x 650 (10th Cir. 2018) ................................................... 30
*Serna v. Colo. Dep't of*,
   *Corrs.*, 455 F.3d 1146 (10th Cir. 2006) ...................................... 27, 28
*St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*,
   605 F.2d 1169 (10th Cir. 1979) ........................................................ 16
*Sutton v. Utah State School for the Deaf and Blind*,
   173 F.3d 1226 (10th Cir. 1999) ........................................................ 32
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) .......................................................................... 16
*Turner v. Alpine Sch. Dist.*,
   No. 2:19-cv-870-TS, 2020 WL 2849964 (D. Utah June 2, 2020) ......... 20

*Wilson v. Montano*,
 715 F.3d 847 (10th Cir. 2013) ................................................................. 26

Federal Statutes

29 U.S.C. § 794 .............................................................................................. 24
42 U.S.C. § 12132 ......................................................................................... 18
U.S. Const. amend. IV ................................................................................. 34

Federal Rules

Fed. R. Civ. P. 10(c) ..................................................................................... 16
Federal Rule of Civil Procedure 12(b)(6) .......................................... 6, 15

Other Authorities

DUCivR 7-1(a)(4) ........................................................................................ 41

**MOTION**

Under Federal Rule of Civil Procedure 12(b)(6) and DUCivR-7-1(a),

Defendants Ryan Burke, Joe Hayes, and David Turner ("Individual District

Defendants"), and Alpine School District (collectively, "District Defendants")

through counsel, move to partially dismiss Plaintiffs' Amended Complaint.

Plaintiffs' allegations fail to state a claim for which relief can be granted with

respect to District Defendants as follows:

- Plaintiffs' claims under the ADA should be dismissed because Plaintiffs fail to

  plead facts showing that (1) Alpine School District discriminated against A.Z.,

  or denied him participation in any activity; and (2) any adverse action

  experienced by A.Z. was "by reason of" his disability.

- Plaintiffs' claims under § 504 of the Rehabilitation Act should be dismissed

  because Plaintiffs fail to plead facts showing (1) the District discriminated

  against A.Z. or denied him participation in any activity; and (2) that A.Z.'s

  disability was the sole cause of any adverse action he experienced.

- Plaintiffs' § 1983 substantive due process claim should be dismissed against

  the Individual District Defendants because: (1) Plaintiffs fail to show that

  Defendant Turner was a supervisor or otherwise responsible for promulgating

  or implementing District policy; (2) Plaintiffs fail to properly plead facts

  showing each Individual District Defendant personally engaged in conduct

violative of the constitution; and (3) the Individual District Defendants are entitled to qualified immunity, because, assuming that Plaintiffs have pleaded sufficient facts to establish a constitutional violation, they cannot show that any asserted right allegedly violated by the Individual District Defendants was clearly established.

- Plaintiffs' § 1983 unreasonable seizure claims should be dismissed because (1) The Fourth Amendment does not apply to use of force by school employees; (2) The District Defendants cannot be held liable because there was no underlying constitutional violation; and (3) Alternatively, if Plaintiffs stated a claim, the Individual District Defendants are entitled to qualified immunity.

Accordingly, the District Defendants request that the Court grant their motion, dismiss Counts I and II of the Amended Complaint in their entirety; dismiss Count III with prejudice as against the Individual District Defendants; and dismiss Counts IV and V against all defendants with prejudice.

## MEMORANDUM OF LAW

## INTRODUCTION

A.Z. was the subject of a physical assault and, at a minimum, inappropriate verbal comments by Defendants Kathy Draper and Alicia Fryer in 2022. To be clear, the District Defendants do not condone the actions of Ms. Draper or Ms. Fryer. Following the discovery of the March 24 incident, Ms. Draper was criminally charged, and their employment was terminated. The District Defendants regret that A.Z. was assaulted on March 24 and that Ms. Draper and Ms. Fryer made inappropriate comments to him before that.

However, the question presented in this motion is not whether A.Z. has a tort claim against Ms. Draper or Ms. Fryer, nor whether either of them violated one of A.Z.'s constitutional rights. Rather, the questions presented are whether the District Defendants can be liable for the statutory and constitutional claims under the prevailing standards because of *their own conduct.* Because they cannot, the claims should be dismissed.

## FACTUAL BACKGROUND

The following facts taken from the Complaint, or from facts which may be judicially noticed, are accepted as true for purposes of this motion only[1]:

---

[1] The District Defendants dispute many of the factual assertions made by Plaintiffs in the Amended Complaint. Should the case continue, the District Defendants reserve the right to challenge Plaintiff's alleged factual allegations.

1.      Plaintiff A.Z. is the nine-year-old son of Andrea and Steve Zolman.[2]

2.      A.Z. lives in Alpine, Utah with his parents and attends the special needs program at Cedar Ridge Elementary in the Alpine School District.[3]

3.      A.Z. was born with a congenital diaphragmatic hernia ("CDH"), which has caused intellectual and physical disabilities.[4]

4.      Alpine School District is a public school district that provides educational services in the State of Utah including at Cedar Ridge Elementary School in the city of Cedar Hills, Utah.[5]

5.      The District oversaw A.Z.'s bus transportation program and was generally responsible for hiring, training, supervising, and disciplining bus drivers and aides within the District, including A.Z.'s bus driver and aid.[6]

6.      Defendant Ryan Burke is the Director of Special Education at Alpine School District.[7]

7.      Defendant Joe Hayes is the Director of Transportation at Alpine School District.[8]

---

[2] Pl.'s Am. Compl. (Doc. No. 21) ¶ 13.
[3] *Id.*
[4] Am. Compl. ¶ 3.
[5] Am. Compl. ¶ 15.
[6] *Id.*
[7] Am. Compl. ¶ 16.
[8] Am. Compl. ¶ 17.

9

8.      Defendant David Turner is the Special Education Director –
Elementary (Central Area), which includes Cedar Ridge Elementary in the Alpine
School District.[9]

9.      Defendant Kathy Draper is a former District school bus driver.[10]

10.     Defendant Alicia Fryer is a former District school bus aide.[11]

<u>A.Z.'s Experience with District Transportation</u>

11.     In 2021, A.Z. enrolled as a first grader in the Life Skills class at Cedar
Ridge Elementary, a District elementary school in Cedar Hills, Utah.[12]

12.     Beginning in August 2021, A.Z. took a District-operated bus to school
three times per week and home from school five times per week.[13]

13.     At all relevant times, Ms. Draper was the driver and Ms. Fryer was
the aide assigned to A.Z.'s bus.[14]

<u>Plaintiffs' Allegations Related to Draper and Fryer's treatment of A.Z.</u>

14.     In January 2022, Draper and Fryer began complaining to the
Zolmans' caregiver that A.Z. was misbehaving on the bus.[15]

---

[9] Am. Compl. ¶ 18.
[10] Am. Compl. ¶ 19.
[11] Am. Compl. ¶ 20.
[12] Am. Compl. ¶ 29.
[13] Am. Compl. ¶ 32.
[14] Am. Compl. ¶¶ 33–34.
[15] Am. Compl. ¶ 36.

15.     Mrs. Andrea Zolman saw Draper and Fryer "berate" A.Z. while putting him into his seat including Ms. Fryer "throwing" her coat onto A.Z. "angrily." When Mrs. Zolman raised concerns, Draper did not respond.[16]

16.     After this incident, Mr. and Mrs. Zolman contacted the District about Draper and Fryer's behavior and inquired about the special education training that bus employees receive.[17]

17.     Two weeks later, having heard nothing from the District, Mrs. Zolman contacted the District again. Dot Dean, another one of Draper's supervisors, informed Mrs. Zolman that she had viewed video footage of A.Z.'s bus and believed Draper and Fryer "needed training" based on their behavior.[18]

18.     Ms. Dean allegedly told Mrs. Zolman that the District was unable to provide training because Draper had not returned repeated phone calls from District.  Ms. Dean then referred Mrs. Zolman to another District employee.[19]

19.     At this point, Mr. and Mrs. Zolman chose to remove A.Z. from the bus and arranged for alternative transportation to and from school.[20]

---

[16] Am. Compl. ¶ 37.
[17] Am. Compl. ¶ 38.
[18] Am. Compl. ¶¶ 43–44.
[19] Am. Compl. ¶ 45.  Plaintiffs allege they were referred to "special education director Joe Hayes." *Id.*  But Joe Hayes is the District's Director of Transportation; Ryan Burke is the District's Director of Special Education. *Id.* ¶¶ 16–17. Because Dot Dean also worked in the transportation department, and Joe Hayes is the Director of Transportation the District assumes that Plaintiffs named the right person they were referred to—Joe Hays—but with the wrong title.
[20] Am. Compl. ¶ 46.

20.     On February 16, 2022, Mr. and Mrs. Zolman contacted District officials including Mr. Burke, Mr. Hayes, and Mr. Turner to "express alarm that the District had been unable to contact Draper" and, from Mrs. Zolman's perspective, the District had not taken any additional action to protect A.Z.[21]

21.     Mr. Burke assured Mr. and Mrs. Zolman that the District had reviewed the video footage of Draper and Fryer's interactions with A.Z. and stated that further training was needed. [22]

22.     In late February 2022, A.Z. resumed using District transportation services on Ms. Draper's bus.[23]

23.     On March 24, 2022, A.Z. took the bus home from school. According to Ms. Draper, A.Z. was misbehaving during the bus ride, so Ms. Drapper "sat" on top of A.Z. to "restrain him."[24]

24.     Later that evening, Mrs. Zolman called Ms. Draper to ask what happened on the bus that day. Ms. Draper told Mrs. Zolman that A.Z. was being "difficult" and admitted that she sat on A.Z. to restrain him.[25]

---

[21] Am. Compl. ¶ 48.
[22] Am. Compl. ¶ 49.
[23] Am. Compl. ¶¶ 53–54.
[24] Am. Compl. ¶ 55.
[25] Am. Compl. ¶ 59.

25.      The District's discipline policy allows adults to physically restrain a student when the student "presents an immediate/imminent danger of physical violence/aggression toward self or others likely to cause serious physical harm."[26]

26.      On March 25, 2022, Mrs. Zolman emailed Mr. Burke, Mr. Hayes, and Mr. Turner in a joint email detailing Draper and Fryer's conduct from March 24, 2022.[27]

27.      Ms. Draper and Ms. Fryer were terminated from their employment.[28]

28.      On April 19, 2022, Mr. and Mrs. Zolman met with District officials and viewed several video segments from A.Z.'s bus at a District office.[29]

29.      Plaintiff alleges "[i]n several of the videos, Draper and Fryer berated A.Z. aggressively. In one, for example, Draper proclaimed that she wished that she could throw A.Z. off the bus. At least one shows Fryer forcibly moving A.Z. for no apparent reason."[30]

30.      After watching a few short video clips, Mr. and Mrs. Zolman walked out.[31]

---

[26] Am. Compl. ¶ 80.
[27] Am. Compl. ¶ 62.
[28] *See* Am. Compl. ¶¶ 19–20 (recognizing that Draper and Fryer are "former" employees of the District).
[29] Am. Compl. ¶ 64.
[30] Am. Compl. ¶ 65.
[31] Am. Compl. ¶ 67.

31.     Mr. and Ms. Zolman immediately withdrew A.Z. from the District's transportation program.[32]

32.     Plaintiff alleges A.Z. suffered mental/emotional and physical injuries as well as developmental delays resulting from Draper and Fryer's conduct.[33]

33.     In October 2022, following a police investigation, Cedar Hills Prosecutor charged Ms. Draper under Utah Criminal Code § 76-5-109(3)(A) for intentional and knowing infliction of physical injury upon a child. Ms. Draper was later convicted of that offense and is currently serving probation.[34]

34.     Plaintiffs allege that the District engaged in a "pattern and practice of misconduct" toward disabled children.[35]  In supporting the claim, Plaintiffs point to the following:

   a. A lawsuit that alleged that a 16-year-old disabled student was assaulted by a different bus driver in the District.[36] After a partial motion to dismiss was granted dismissing ADA and Rehabilitation Act and Ryan Burke as a defendant, and a motion for partial judgment on

---

[32] Am. Compl. ¶ 74.
[33] Am. Compl. ¶¶ 75–76.
[34] Am. Compl ¶ 73; *see also* Sentence, Judgment, Commitment (doc. 16), *State v. Draper*, Case No. 221101050 (Utah 4th Dist. Ct. March 14, 2023).
[35] Am. Compl. ¶ 77.
[36] *Id.* (citing *Turner v. Alpine Sch. Dist.*, No. 2-19-cv-00870-TS-DAO (D. Utah filed 2019)).

the pleading was granted, the lawsuit was settled "without any admissions of liability by any party…"[37]

b. Another lawsuit in which a disabled student alleged he was improperly restrained in a Rifton chair.[38] After the trial court granted the defendants' partial motion to dismiss, concluding that Alpine employees' actions did not shock the judicial conscience and did not violate the student's procedural due process right, that case, too, was "resolved without any admissions of liability by any party.[39]

c. Allegations related to a Title IX investigation undertaken by the U.S. Department of Education related to allegations of sexual harassment by employees or other students.[40]

## LEGAL STANDARDS

### Motion to Dismiss Standard

The District Defendants bring challenges to Plaintiffs' Amended Complaint under Federal Rules of Civil Procedure Rule 12(b)(6).   In reviewing a 12(b)(6) motion, a court assumes the truth of well-pleaded facts and draws reasonable

---

[37] *See Turner v. Apline Sch. Dist.*, Doc. Nos. 29, 46, 57.
[38] Am. Compl. ¶ 78 (citing *Keller v. Alpine Sch. Dist.*, No. 19-cv-874-DBP (D. Utah filed 2019)).
[39] *See Keller v. Alpine Sch. Dist.*, Doc Nos. 44, 67, 68.
[40] Am. Compl. ¶¶ 81–84; *see also* U.S. Department of Education, Office for Civil Rights, *Alpine School District* OCR Compliance Review 08-20-5001 (Sept. 20, 2023), *available at* https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/08205001-a.pdf.

inference in a light most favorable to the plaintiff. *E.g.*, *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011). But a claim survives only if "there is plausibility in the complaint." *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*. Threadbare recitals of elements, facts "merely consistent" with liability, "labels and conclusions," or "unadorned, the-defendant-unlawfully-harmed me accusation[s]" are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Leverington*, 643 F.3d at 723 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Gee v. Pacheco*, 627 F.3d 1178, 1184–85 (10th Cir. 2010) (citations and quotations omitted); *Hall*, 584 F.3d at 863 (citations and quotations omitted).

In reviewing a motion to dismiss, the Court may rely on the facts as alleged in the complaint, but may also rely on all documents adopted by reference in the complaint, documents attached to the complaint, or facts that may be judicially noticed. *See* FED. R. CIV. P. 10(C); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007); *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991). In the context of a motion to dismiss, this Court may take judicial notice of a state court docket and filings. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979). A court may also take judicial notice of

"government reports" and "official government publications." *Pueblo of Sandia v. United States*, 50 F.3d 856, 861 n.6 (10th Cir. 1995).

Qualified Immunity Standard

The District Defendants also assert the defense of qualified immunity. Qualified immunity "shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (cleaned up). The defense protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quotation omitted). A defendant is entitled to qualified immunity unless the plaintiff can (1) "make out a violation of a constitutional right," and (2) show that "the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted). Plaintiff bears the "heavy burden" of satisfying both parts of this test to overcome qualified immunity. *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017).

Moreover, because "[q]ualified immunity is an immunity from suit rather than a mere defense to liability" a dismissal under the doctrine should be with prejudice. *Pearson*, 555 U.S. at 237; *Clark v. Wilson*, 625 F.3d 686, 692 (10th Cir. 2010).

## LEGAL ARGUMENT

### 1. Plaintiffs fail to state a claim under Title II of the ADA.

In Count I of the Amended Complaint, Plaintiffs allege that the District violated Title II of the Americans with Disabilities Act by 1) failing to properly train and thereby prevent the alleged abuse by Draper and Fryer; and 2) effectively prohibiting A.Z. from participating in the school bus program.[41] However, Plaintiffs have not plead facts demonstrating that A.Z. was discriminated against or excluded from a covered program, nor can Plaintiffs establish that any District employee took any action because of A.Z.'s disability. Therefore, The Title II claim should be dismissed.

Title II of the ADA states "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a viable claim under this section, the Plaintiff must allege facts showing "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the

---

[41] Am. Compl. ¶¶ 87–104.

Plaintiff's disability." *J.V. v. Albuquerque Pub. Sch.,* 813 F.3d 1289, 1295 (10th Cir. 2016) (quotations and brackets omitted)). The District Defendants do not dispute that Plaintiffs satisfy the first element of the test but do dispute that Plaintiffs have pleaded sufficient facts to establish the remaining two elements.

### 1.1. Plaintiffs fail to plead that Plaintiff was discriminated against or denied participation in an activity.

"Based on the second element, courts have recognized two types of claims: (1) exclusion from or denial of benefits and (2) discrimination." *Id.* Plaintiffs allege both. And "[b]oth require proof of the foregoing three elements, including proof that any denial of benefits or discrimination was by reason of the plaintiff's disability." *Id.* (quotations omitted).

### 1.1.1. Plaintiffs' allegations of failure to train to not support Plaintiff's claim of disability discrimination.

Plaintiffs allege that the District failed to "hire reasonably conscientious employees and to properly train them on appropriate ways to interact with and respond to issues with disabled children…" in violation of Title II of the ADA.[42] However, the Tenth Circuit has not recognized a failure-to-train claim of discrimination under the ADA. *See J.V.,* 813 F.3d at 1289. Even if such a claim were to exist, it requires a showing of deliberate indifference. *Id.* at 1297. "Only where a failure to train reflects a deliberate or conscious choice by a

---

[42] Am. Compl. ¶ 79.

municipality … can a city be liable for such a failure …. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 389 (1989). The Tenth Circuit relies on the § 1983 deliberate indifference standard when assessing ADA failure to train claims, specifically:

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern or tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior is a violation of federal rights is highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee with specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.

*Bryson v. City of Okla. City,* 627 F.3d 784, 789 (10th Cir. 2010) (quotations omitted). "The Supreme Court has made clear that merely showing that additional training would have been helpful or could have avoided the injury is not sufficient to establish liability." *Turner v. Alpine Sch. Dist.,* No. 2:19-cv-870-TS, 2020 WL 2849964, at *2 (D. Utah June 2, 2020) (unpublished) (citing *Connick v. Thompson,* 563 U.S. 51, 68 (2011)). "Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program…." *City of Canton,* 489 U.S. at 391.

Here, Plaintiffs have failed to allege any facts to suggest that the District Defendants acted with deliberate indifference. Plaintiffs do not allege any facts to

establish the District had "actual or constructive knowledge" that Draper or Fryer

were "substantially certain" to physically assault A.Z. Plaintiffs only point to

previous disputes involving the District related to a Title IX investigation, a 2018

sexual assault, and a 2018 restraint of a student. [43] However, none of these

complaints involved Draper or Fryer so they could not put State Defendants on

notice that Draper and/or Fryer would mistreat A.Z. Neither does Plaintiff allege

Draper or Fryer established a pattern of unconstitutional behavior. The two

derogatory remarks Plaintiffs allege, while concerning, do not establish such a

pattern. Nor can it be said that such actions made it "highly predictable" that a

physical assault would occur. Therefore, Plaintiffs have failed to plead facts

sufficient to show State Defendants acted with deliberate indifference and cannot

support a disability discrimination claim based on the District's failure to train

Draper or Fryer.

### 1.1.2.   Plaintiffs fail to state a claim that the District Defendants excluded A.Z. from participating in the District's bus program.

Plaintiffs' first cause of action also alleges that "the District effectively

prohibited A.Z. from participating in the school bus program."[44] However,

Plaintiffs do not allege facts (1) establishing that A.Z. was in fact denied bus

services, (2) that such an alleged denial affected A.Z.'s ability to attend school, (3)

---

[43] *See* Am. Compl. ¶¶ 77, 78, 81.
[44] Am. Compl. ¶ 94.

what benefits of the bus program A.Z. was unable to access as a result of not riding the bus, or (4) that A.Z. was actually denied transportation services. In fact, the Zolmans specifically stated they made the decision to pull A.Z. from the bus and did not allege facts to suggest they sought an alternative means of transportation from the District or otherwise attempted to get A.Z. continued access to bus services. Therefore, Plaintiff has not alleged any facts to establish A.Z. was denied access to bus services. Plaintiff only offers conclusory statements that he was.

In addition, the Tenth Circuit has held that being excluded from participation in a program as a direct result of the disabled student's conduct, unrelated to his disability, does not violate Title II of the ADA. *See J.V.*, 813 F.3d at 1296 ("Any educational interference from Officer Sanchez's handcuffing C.V. to his chair was the product of C.V.'s behavior."). Therefore, any denied bus access that resulted from restraining A.Z. was the product of A.Z.'s behavior and not intentional discrimination by the District Defendants. As such, Plaintiffs have failed to state facts establishing a plausible claim under the second element of their Title II claim, and therefore it should be dismissed.

### 1.2.  Plaintiffs have failed to allege any District action was taken because of A.Z.'s disability.

Plaintiffs also do not allege any facts to suggest that Defendants denied A.Z. access to the bus program was "by reason of" A.Z.'s disability. *J.V., 813 F.3d at 1295*.

Rather, Plaintiffs allege Draper and Fryer mistreated A.Z. but give no alleged reason for that treatment, other than Draper's representation that A.Z. was misbehaving on the bus.[45]

In fact, a student's conduct may be regulated, so long as action is not taken by reason of the student's disability. *See J.V., 813 F.3d  at 1295–96* (holding the plaintiff's ADA claim failed because the officer arrested the student for her assaultive conduct, not based on her disability: "It was th[e] battery, rather than a disability, that led to the arrest") (citation omitted); *see also J.H. ex rel. J.P. v. Bernalillo Cnty., 806 F.3d 1255, 1257, 1260  (10th Cir. 2015)* (rejecting the claim that an officer violated the ADA when he arrested a disabled student for kicking a teacher, holding the officer acted based on the student's conduct and not his disability).

Draper and Fryer's restraint of A.Z. to avoid injury to themselves and other children, is, by default, not discriminatory based on disability. Because Plaintiffs have failed to allege any facts to suggest the District Defendants acted because of

---

[45] Am. Compl. ¶ 36.

23

A.Z.'s disability, they do not pled facts regarding the third element required to state a claim under Title II of the ADA. As such, the claim should be dismissed.

### 2. Plaintiffs fail to state a claim under the Rehabilitation Act.

Count II of the Amended Complaint seeks relief under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Largely for the same reasons that Plaintiffs' ADA claim fails, their Rehab Act claim also fails.

To state a claim under § 504, a plaintiff must prove (1) that he is a disabled individual within the meaning of the Rehab Act, (2) he is "otherwise qualified" for the benefit sought, (3) that he was discriminated against solely by reason of his disability, and (4) that the program in question receives federal funding. *Cohon ex rel. Bass v. N.M. Dep't of Health*, 646 F.3d 717, 725 (10th Cir. 2011). The Tenth Circuit evaluates claims under the Rehab Act identically to the ADA with two exceptions: (1) the Rehab Act requires the program to receive federal funding, (which the District Defendants do not dispute in this case) and (2) the Rehab Act requires a higher standard of causation "solely by reason of," instead of the "but for" standard in the ADA. *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1302 n.4 (10th Cir. 2021).

Accordingly, for the reasons discussed in Section 1 above, Plaintiffs fail to state a plausible claim under the Rehab Act. And, because Plaintiffs failed to plead facts supporting a "but-for" causation, they have obviously failed to plead facts supporting the higher, "sole cause" standard as required by the Rehab Act.

24

Therefore, Plaintiff fails to state a claim for which relief may be granted under the Rehab Act and the claim should be dismissed.

### 3. Count III should be dismissed against the Individual District Defendants.

Count III of the Amended Complaint alleges that Ms. Draper and Ms. Fryer engaged in conscience-shocking behavior violative of A.Z.'s substantive due process rights.[46] But more than that, Plaintiffs allege that the District Defendants are liable for Ms. Draper and Ms. Fryer's alleged misconduct because they failed to protect A.Z. from harm, allowed a "practice of abuse" to "flourish, and failed to adequately train or supervise Ms. Draper and Ms. Fryer."[47]

Because Plaintiffs have failed to properly plead a supervisory liability claim against any of the Individual District Defendants, and because the Individual District Defendants are entitled to qualified immunity because the law is not clearly established, Count III should be dismissed as to them.

There is no respondeat superior liability under § 1983. *Iqbal, 556 U.S. at 676*. Rather, "each Government official … is only liable for his or her own misconduct." *Id. at 677*. To establish supervisor liability under § 1983, a plaintiff "must establish three elements: (1) personal involvement; (2) causation; and (3) state of mind." *Estate of Jensen ex rel. Jensen v. Clyde*, 989 F.3d 848, 857 (10th Cir.

---

[46] Am. Compl. ¶ 107
[47] Am. Compl. ¶¶ 109–113.

2021) (citations and quotations omitted). "A supervisor is personally involved when he or she created, promulgated, implemented, or had responsibility over the policy at issue" or when the supervisor completely fails to train or provides such "reckless or grossly negligent training that makes misconduct nearly inevitable." *Id.*

"For causation," plaintiffs must show that the supervising defendant "set in motion a series of events that he knew or reasonably should have known would cause others to deprive" the plaintiff of constitutional rights." *Id.* at 858. (cleaned up).

"Finally, for the state-of-mind element," a plaintiff must prove that a defendant "knowingly created a substantial risk of constitutional injury." *Id.* (cleaned up). With regard to a substantive due process claim, plaintiffs must prove at least deliberate indifference to establish "state-of-mind." *Wilson v. Montano*, 715 F.3d 847, 858 (10th Cir. 2013).

Liability must be based on a showing of an "affirmative link" between the supervisor-defendant and the underlying constitutional violation. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). Because a plaintiff must prove that "each defendant took some act with the constitutionally applicable state of mind that caused the alleged constitutional violation," *id.* at 1200, "it is particularly important in a § 1983 case brought against a number of government

actors that the complaint make clear who is alleged to have done what to whom,
as distinguished from collective allegations." *Brown v. Montoya*, 662 F.3d 1152,
1165 (10th Cir. 2011).

### 3.1. Plaintiffs fail to plead a supervisory liability claim against David Turner.

Count III should be dismissed against David Turner because Plaintiffs have
failed to plead that Mr. Turner personally participated in the constitutional
violation; that is, that he was an employee with the authority to implement policy
covering Ms. Draper and Ms. Fryer's actions, supervise them, or otherwise take
action to prevent any alleged unconstitutional acts. See *Brown*, 662 F.3d at 1165
(personal involvement requires that the supervisor "promulgated or was
responsible for" the policy). And "failure to supervise is only actionable under §
1983 for a defendant who had a duty to supervise." *Serna v. Colo. Dep't of Corrs.*,
455 F.3d 1146, 1154 (10th Cir. 2006).

In this case, Plaintiffs have pleaded that Mr. Turner is the "Special
Education Director-Elementary" and was "responsible for implementing special
education policies at Cedar Ridge [Elementary, the school A.Z. attended]."[48]
Plaintiffs alleged that they contacted him (along with other "school officials") to
"discuss" their concerns on the bus,[49] that he (along with other school officials)

---

[48] Am. Compl. ¶ 18.
[49] Am. Compl. ¶ 48.

did not provide an "explanation as to why the District had taken no action" regarding Draper or Fryer,[50] that he was copied on a March 25th email complaining about the March 24th event,[51] and the District, "led by" administrators including Turner, failed to provide videos.[52] The remaining allegations simply include Turner in all allegations of administrator misconduct.

These allegations are insufficient to state a supervisor liability claim against Mr. Turner because Plaintiffs make no allegations that (1) Mr. Turner had any responsibility to implement policy on school buses; (2) he had any obligation to promulgate policy whatsoever, much less regarding to the treatment of disabled students on buses, *Brown,* 662 F.3d at 1165; and (3) he had any supervisory, or even training authority over Ms. Draper or Ms. Fryer. *Serna,* 455 F.3d at 1154.

### 3.2. Plaintiffs fail to identify specific actions taken by Ryan Burke and Joe Hayes.

Similarly, Count III should be dismissed against Defendants Ryan Burke (the District's Director of Special Education) and Joe Hayes (the District's Director of Transportation), because Plaintiffs have failed to allege what specific actions or inactions each undertook.

Other than a description of their titles, minimal allegations about receiving complaints from the Zolmans, and an allegation that Burke assured the Zolmans

---

[50] Am. Compl. ¶ 51.
[51] Am. Compl. ¶ 62.
[52] Am. Compl. ¶ 70.

that Draper and Fryer were capable of working with special needs children,[53] there are no individual allegations elucidating Burke's and Hayes' individual conduct.  In particular, in Count III, Plaintiffs refer to Burke and Hayes as "senior leaders" and list their names seriatim in the allegations of wrongdoing.[54] Plaintiffs have simply "lump[ed]" Mr. Burke and Mr. Hayes together and attempted to state a claim based on "collective allegations." *Brown*, 662 F.3d at 1165.  This is insufficient, and the claim should therefore be dismissed against both.

### 3.3.   The Individual Defendants are entitled to qualified immunity.

Finally, Count III should be dismissed as to the Individual District Defendants on the grounds of qualified immunity, because Plaintiffs cannot point to any authority clearly establishing A.Z.'s rights such that every reasonable official would understand that the Individual District Defendants' actions violated them.

For the purposes of this Motion, Individual District Defendants analyze only the "clearly established" prong of qualified immunity, as is sometimes appropriate when qualified immunity is raised at the pleadings stage.  *Pearson v. Callahan*, 555 U.S. 223, 238–39 (2009).

Plaintiffs' theories for liability underlying their substantive due process claims are multitudinous but still insufficient. Specifically:

---

[53] Am. Compl. ¶¶ 48–50.
[54] Am. Compl. ¶¶ 109–113.

- **State-created danger.** Plaintiffs may intend to invoke the state-created danger theory by alleging that the Individual State Defendants "took no meaningful action to ensure that disabled children… were protected from harm."[55] That theory subjects government actors to liability when they "used their authority to create an opportunity that would not otherwise have existed" for another to cause harm. *Armijo ex rel. Chavez. v. Wagon Mount Pub. Sch.*, 159 F.3d 1253, 1263 (10th Cir. 1998). However, the law is not clearly established that simply allowing a student back on a bus would violate this right, even when the government official has knowledge that those on the bus might inflict harm. *See, e.g.*, *Scott v. Mid-Del Schools Bd. of Educ.*, 724 F. App'x 650, 655 (10th Cir. 2018) (unpublished) (concluding that school principal was not liable under a state-created-danger theory, even though teacher's underlying abusive conduct stated a substantive due process claim and the principal knew of the teacher's aggressive behavior toward the student).

- **Failure to train.** Supervisors may be liable for subordinates' constitutional violations if a plaintiff shows that a policymaker is "on actual or constructive notice that a particular omission in their training program causes" a constitutional violation and is deliberately indifferent in retaining the program. *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011). "A

---

[55] Am. Compl. ¶ 109.

pattern of similar constitutional violations by untrained employees is 'ordinarily necessary.'" *Id.* at 62 (citations and quotations omitted).  Otherwise, liability can attach if the violation of federal rights was "highly predictable" or the "plainly obvious consequence" of substandard training. *Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10th Cir. 1998). However, if the improper behavior is also "patently obvious," then there is no need for training.  *Id.*  Here, the law is not clearly established that the patterns of behavior alleged suffice to put the Individual District Defendants on notice.   Plaintiffs' reference to two previous lawsuits, where the parties specifically disclaimed any liability, is insufficient because "unsubstantiated allegations from complaints filed against [governmental] defendants" cannot provide sufficient notice.  *Estate of Lobato ex rel. Montoya v. Correct Care Sols., LLC*, No. 15-CV-02718,  2017 WL 1197295,  at *8 (D. Colo. Mar. 31, 2017)  (unpublished). After all, the fact that the school has civil suits "brought against them in the past that resulted in settlements is not even evidence of wrongdoing," much less a constitutional violation. *Morris v. City of New York*, No. 12-CV-3959,  2013 WL 5781672,  at *11 (E.D.N.Y. Oct. 28, 2013) (unpublished).  And there is no law establishing that complaints related to sexual assaults would put the disability directors and transportation director on notice of a need to train employees regarding physical assaults on disabled children.  Likewise, the law is not clearly established that the behavior displayed

by Ms. Draper and Ms. Fryer was highly predictable.  At most, the Individual

District Defendants knew about inappropriate—but not conscience-shocking

behavior.  And it's not clearly established that training would have prevented the

harm alleged here.

- **Unconstitutional policy or practice.** A supervisor who is responsible

for an unconstitutional policy or practice and is deliberately indifferent to its

effect may be liable.  *See Dodds,* 614 F.3d at 1199–1200.   However, it is not

clearly established that the Individual District Defendants violated the law in this

case.  Plaintiffs do not allege that the District's use-of-force policy itself was

unconstitutional, but rather that there was a de facto "practice of abuse" that

went unaddressed.[56] Plaintiffs' conclusory claim about such a "practice" is

insufficient, *see Derosier v. Balltrip,* 149 F. Supp. 3d 1286, 1296 (D. Colo. 2016),

and the law is not clearly established that practice cannot be based on the

previous incidents, which were of such a different degree and subject that it could

not put the individuals on notice.  While *Sutton v. Utah State School for the Deaf

and Blind,* 173 F.3d 1226, 1241 (10th Cir. 1999), recognized a general

requirement to implement policies to prevent sexual assaults on disabled children,

the case's controlling value is diminished.  It relied on the *Gibson v. Conley* "no set

of facts" pleading standard and it was issued before the Supreme Court's

---

[56] Am. Compl. ¶ 113.

numerous qualified immunity cases in the 2000s and 2010s that urged courts not to define a right a too high of a level of generality. Accordingly, the Individual District Defendants are entitled to qualified immunity, and Claim III should be dismissed against them.

### 4.   Count IV should be dismissed, because the Fourth Amendment does not apply to school officials' use of force.

Count IV of Plaintiffs' Amended Complaint alleges that Draper's use of force against A.Z. in the March 24th event was "objectively unreasonable" in violation of the Fourth Amendment, and that "Senior leaders" in the District, including the Individual District Defendants "tolerated" a "practice of physical abuse."[57]  These claims are not cognizable because the "reasonableness" standard from the Fourth Amendment does not apply in school settings where excessive force was used on a student.  As such, there was no underlying constitutional violation, and there can be no supervisor or *Monell* liability by the District or the Individual District Defendants.  Finally, even if Plaintiffs could attempt to state such a claim, any such a claim against the Individual District Defendants should be dismissed, as the constitutional right was not clearly established in March 2022.

---

[57] Am. Compl. ¶ 120.

### 4.1.  The Fourth Amendment's protections do not apply to claims of excessive force by school employees.

The Fourth Amendment prohibits unreasonable searches and seizures.  U.S.
CONST. AMEND. IV.  And, while the Fourth Amendment protects citizens from, for
example, excessive force during an arrest, *see Graham v. Connor*, 490 U.S. 386,
394 (1989) it does not apply to claims of excessive force made against school
officials, who are in a "unique constitutional position" because they have the
authority to restrict "'students' movement and location" in the school context.
*Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 171 (3d Cir.
2001) (citations and quotations omitted). "The momentary use of physical force
by a teacher in reaction to a disruptive or unruly student does not affect a 'seizure'
of the student under the Fourth Amendment and therefore is a scenario to which
the Fourth Amendment does not textually or historically apply." *Id.* at 172
(citations and quotations omitted).  Therefore, when the claim is "of excessive
force, not of unreasonable detention," the proper mode of analysis is with the
shocks-the-consciousness test used to determine a violation of the substantive
right found in the Due Process Clause of the Fourteenth Amendment. *Id.*; accord
*Ingraham v. Wright*, 430 U.S. 651, 674 (1977) (suggesting that excessive corporal
punishment in schools could violate substantive due process).

The Tenth Circuit has followed this line of reasoning, explicitly applying the
substantive due process analysis to claims of excessive force used on students by

school officials. *Garcia ex rel. Garcia v. Miera*, 817 F.2d 650, 653–65 (10th Cir. 1987) (concluding that "brutal" or "excessive" corporal punishment implicates a student's substantive due process rights); *Abeyta ex rel. Martinez v. Chama Valley Indep. Sch. Dist. No. 19*, 77 F.3d 1253, 1256 (10th Cir. 1996) (analyzing, and dismissing, a claim of -physical, verbal, sexual abuse of sixth grade student by teacher under a substantive due process analysis); *Harris v. Robinson*, 273 F.3d 927, 930 (10th Cir. 2001) (analyzing, and granting summary judgment, claim of abuse when a teacher forced a mentally disabled student to clean up a toilet with his bare hands, under a substantive due process analysis); *Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 791 (10th Cir. 2013) (analyzing a § 1983 claim of abuse of a disabled student under the Fourteenth Amendment and explicitly rejecting a Fourth Amendment basis for relief).

Though the standard was originally used to analyze the metes and bounds of proper corporal punishment, the Tenth Circuit "appli[es] this standard to all school discipline cases ...." *Muskrat*, 715 F.3d at 787.

Plaintiffs allege that Ms. Draper sat on top of A.Z. to restrain him after Ms. Draper perceived him to be misbehaving.[58] This is a "school discipline" case in which the substantive due process analysis exclusively applies. *See Harris*, 273

---

[58] Am. Compl. ¶¶ 55, 59

F.3d at 931; *Muskrat*, 715 F.3d at 792.   Therefore, Plaintiffs have no cause of

action under the Fourth Amendment, and that claim should be dismissed.

### 4.2.    The District and Individual District Defendants Cannot Be Liable Because No Employee Violated the Constitution.

Plaintiffs make no allegation that the Individual District Defendants—

Burke, Hayes, and Turner—took any action directly to violate A.Z.'s constitutional

rights.  Rather, they seek to hold them liable for failing to train, supervise, or stop

an allegedly unconstitutional practice.[59] They seek to hold the District liable

under the same theories.[60]  However, when no employee  engaged in an

underlying constitutional violation, there can be no supervisor liability. See

*Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).  Likewise, without an

underlying constitutional violation committed by one of its employees,  a local

governmental entity cannot be held liable for an alleged constitutional violation.

*Muskrat*, 715 F.3d at 788.

Because there was no violation of the Fourth Amendment by any District

employee,  neither the Individual District Defendants nor the district themselves

can be liable under the Fourth Amendment.   *Fogarty*, 523 F.3d at 1162; *Muskrat*,

715 F.3d at 788.   Count IV of the Amended Complaint should be dismissed

against all District Defendants.

---

[59] Am. Compl. ¶¶ 120–124.
[60] Am. Compl. ¶ 121.

### 4.3. Even if Plaintiffs stated a claim under the Fourth Amendment, the law was not clearly established, and the Individual District Defendants are entitled to dismissal.

Finally, even if the Court were to conclude that Plaintiffs stated a legally sufficient Fourth Amendment claim, it should be dismissed against the Individual District Defendants because the law was not clearly established in March 2022.

In *Muskrat*, the Tenth Circuit affirmed the lower court's dismissal of a claim that a disabled student's constitutional rights were violated when he was subjected to unprovoked uses of physical force and timeouts in an isolated room. 715 F.3d at 780–81. The trial court dismissed the claims under the Fourteenth Amendment analysis. On appeal, the plaintiffs argued that the trial court should have utilized a Fourth Amendment "reasonableness" analysis (even though they didn't directly assert it below). *Id.* at 790–91. The court of appeals rejected the argument, concluding that the Fourteenth Amendment standard applied. *Id.* at 791. Distinguishing the only precedent applying the Fourth Amendment in a school discipline-like situation, the court held that "in this circuit, it is not settled law that the Fourth Amendment applies in school discipline cases." *Id.* at 791–92.

This black-letter law has not been modified in the last decade. There is no clearly established Fourth Amendment right to be free from unreasonable seizures in the context of school officials imposing physical restraint. Accordingly, and at a minimum, the Individual District Defendants are entitled to qualified immunity, and Count IV should be dismissed as to them.

**5. Count V fails to state a claim, as there is no clearly established Fourth Amendment right to have another school district employee intervene in potentially unconstitutional school discipline, and the Individual District Defendants were not in a position to Intervene.**

Count V of the Amended Complaint, captioned "Failure to Intervene; Fourth Amendment and Fourteenth Amendment," alleges that the Individual District Defendants "had a reasonable opportunity to prevent the violation of A.Z.'s constitutional rights … but failed to do so."[61]  This fails to state a legal claim against any of the Individual District Defendants.

Under the Fourth Amendment, "a *law enforcement official* who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983." *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996) (emphasis added).  As discussed above, the Fourth Amendment does not apply to uses of force by school officials.  Likewise, Counsel for the District Defendants could not find a Tenth Circuit case in which a Fourth Amendment failure-to-intervene claim was stated against a school official for failing to prevent violence or abuse caused by a school employee.   Because a Fourth Amendment seizure claim is legally insufficient under these fact, a failure-to-intervene Fourth Amendment claim is also legally insufficient.

---

[61] Am. Compl. ¶ 128.

Furthermore, the Fourth Amendment failure to intervene claim is limited to "infringement [of citizens' constitutional rights] by other law enforcement officers *in* [other officers'] presence." *Hall v. Burke*, 12 F. App'x 856, 861 (10th Cir. 2001) (unpublished) (citations and quotations omitted). In this case, none of the allegedly unconstitutional actions took place in the Individual District Defendants' presence. Therefore, even if a Fourth Amendment failure-to-intervene claim could exist at some level under these facts, it cannot be stated against the Individual State Defendants.

Plaintiffs have not pleaded a legally sufficient, clearly established, Fourth Amendment failure-to-intervene claim. It should be dismissed in its entirety against all District Defendants.

## CONCLUSION

For the reasons stated above, the Court should grant the motion, dismiss Counts I, II, IV, and V as to all District Defendants, and dismiss Count III as against the Individual District Defendants.

RESPECTFULLY SUBMITED THIS 15th day of April, 2024.

OFFICE OF THE UTAH ATTORNEY GENERAL


*/s/ Kyle J. Kaiser*
Kyle J. Kaiser
Lora Cooper
Nicole Johnston
Assistant Utah Attorneys General
*Attorney for District Defendants*

## WORD COUNT CERTIFICATION

I, Kyle Kaiser, certify that DEFENDANTS' ALPINE SCHOOL DISTRICT, RYAN BURKE, JOE HAYES, AND DAVID TURNER PARTIAL MOTION TO DISMISS AND MEMORADNUM IN SUPPORT, contains 7344 words and complies with DUCivR 7-1(a)(4).

/s Kyle J. Kaiser
Kyle J. Kaiser
Counsel for District Defendants